# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| JENNIFER L. MARCUM, | : | Case No. 2:24-CV-4048 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge James L. Graham |
| vs. | : | Magistrate Judge Stephanie K. Bowman |
| | : | |
| STATE OF OHIO, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, an inmate currently in state custody at the Ohio Reformatory for Women, in Marysville, Ohio, has filed this *pro se* civil rights action under 42 U.S.C. § 1983 and Ohio State law.[1]  She names as defendants the State of Ohio/Ohio Attorney General, the Coshocton County Sheriff's Department, the Coshocton County Jail (Jail), four employees at the Jail (Tim Rodgers, Macy Tracy, Chip Lafferty, and "Jessica" (alternatively referred to by plaintiff as "Officer Jess")), AAA Sly Bail Bonds, MK Bailbonds, and bondsman Michael Kinney.  (*See* Doc. 1-1, at PageID 15-16; Doc. 1-2).  It also appears from the body of the complaint that plaintiff intends to sue a second, unidentified bondsman (Unknown Bondsman), the Jail nurse (Unknown Nurse),

---

[1]Plaintiff attaches an appendix of exhibits to her complaint consisting of what appears to be two affidavits signed by her; a copy of Ohio Administrative Code section 5120-9-01, Use of Force; and pages from a publication on Bell's palsy.  Pursuant to Federal Rule of Civil Procedure 10, these exhibits are considered a part of the complaint "for all purposes."  *See* Fed. R. Civ. P. 10(c).  *See Fishman v. Williams*, No. CV 14-4823, 2016 WL 11484591, at *7 (C.D. Cal. Sept. 21, 2016) ("When screening a *pro se* plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court may consider facts drawn from the complaint and supporting exhibits attached thereto."); *Johnson v. Buffalo Pub. Schools: Adult Educ. Div.*, No. 19-CV-1484, 2021 WL 9455714, at *3 (W.D.N.Y. Jan. 7, 2021) ("The Court deems the attachments and exhibits attached to Johnson's Complaint part of the pleading and considers them, to the extent they are relevant, in its screening decision.").  However, the Court declines to comb through the record to raise new claims or make legal arguments for plaintiff.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("Furthermore, although this court has discretion to more broadly review the record on appeal, we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it.").

and the Ohio Department of Rehabilitation and Correction (ODRC).  (*See* Doc. 1-2, at PageID 27; 30, 36).

Given plaintiff's *pro se* status, the Court liberally construes the complaint to name each of the above thirteen entities and/or individuals as defendants.[2]  With the exception of the Ohio Attorney General, whom plaintiff expressly states is sued only in an official capacity, the Court understands plaintiff to be suing the individual defendants in both an official and individual capacity.  (*See* Doc. 1-1, at PageID 15-16).  Plaintiff has paid the $405 filing fee necessary to commence this action.  By separate order, her motion to proceed *in forma pauperis* has been denied in part as moot and granted in part with respect to service of process.

Although plaintiff has paid the filing fee, the Court is required by statute to screen the complaint (Docs. 1-1; 1-2; 1-3) to determine if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or states a claim against a person who is immune from suit. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) ("A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners"), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 206 (2007); *see also LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

---

[2]*See e.g.*, *Garza v. L.C.M.H.F.*, No. 09-3144, 2009 WL 2912790, at *1 (D. Kan. Sept. 9, 2009) (liberally construing *pro se* complaint to name entity included in case caption and individual listed in part two of the complaint as defendants); *see also Burley v. Quiroga*, No. 16-CV-10712, 2019 WL 4316499, at *14 (E.D. Mich. June 6, 2019), *report and recommendation adopted*, No. 16-CV-10712, 2019 WL 3334810, at **14-17, 19 (E.D. Mich. July 25, 2019) (allowing parties to be identified in body of complaint); *Church v. City of Cleveland*, No. 1:10-CV-1399, 2010 WL 4883433, at *3 (N.D. Ohio Oct. 26, 2010), *report and recommendation adopted*, No. 1:10CV1399, 2010 WL 4901739 (N.D. Ohio Nov. 23, 2010) ("A court may look to the body of the complaint to determine the parties, in what capacity the defendants are being sued, and the nature of the claims asserted.").

**Screening of Complaint**

**A.     Legal Standard**

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim

with a rational or arguable basis in fact or law.  *Neitzke v. Williams,* 490 U.S. 319, 328-29

(1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no

arguable legal basis when the defendant is immune from suit or when the plaintiff claims a

violation of a legal interest which clearly does not exist.  *Neitzke,* 490 U.S. at 327.  An action

has no arguable factual basis when the allegations are delusional or rise to the level of the

irrational or "wholly incredible."  *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Lawler,* 898

F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or

delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th

Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a

claim upon which relief may be granted.  28 U.S.C. § 1915A(b)(1).  A complaint filed by a *pro*

*se* plaintiff must be "liberally construed" and "held to less stringent standards than formal

pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)

(quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  By the same token, however, the

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71

("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a

claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Erickson*, 551 U.S. at 93 (citations omitted).

**B.      The Complaint**

Liberally construed, *see Erickson*, 551 U.S. at 94, the complaint consists of four groups of claims.  The claims arise out of two arrests and plaintiff's time as a pretrial detainee at the Jail following her arrests.  For the sake of clarity, the Court will refer to plaintiff's groups of claims as counts.

***Count One***

In Count One, plaintiff alleges that defendant AAA Sly Bail Bonds did not follow procedures when arresting her on April 4, 2022, after her bond was purportedly revoked.  (Doc. 1-2, at PageID 25-26).  Plaintiff asserts that she "ha[d] no positive drug screens and ha[d] never missed a counseling appointment or drug screen."  (*Id*. at PageID 25).  She further asserts that

4

the trial court "failed to provide [her] with an expression of results pursuant to [Ohio Rev. Code] § 3701-53-02 proving that there was actually a positive drug screen to revoke [her] bond." (*Id*.).

### *Count Two*

Plaintiff was apparently booked at the Jail following her arrest because she alleges in Count Two that, after sleeping for hours, she was thirsty but there was no cup in her cell for water. (*Id*. at PageID 26). Plaintiff knocked on the door but was allegedly told to wait until the next meal. Plaintiff claims that she was severely dehydrated and knocked on the door louder to request water. She claims that defendant Tracy forced her out of the cell and placed her in a nearby, padded cell. (*Id*.). Plaintiff contends that she continued to ask for water and to return to the first cell to sleep but she was told "no." Plaintiff alleges that when the meal tray was served, she pushed the tray out of the slot and again asked for something to drink. Defendant Tracy then allegedly opened the door to the padded cell and sprayed plaintiff with pepper spray. (*Id*.). Defendant Officer Jess was also allegedly present. (Doc. 1-1, at PageID 18). According to plaintiff, she suffers from asthma, had an asthma attack as a result of being sprayed, and EMTs were called. (Doc. 1-2, at PageID 26). She also contends that her skin was burning from the spray and she had to remove her clothes. Without additional detail, plaintiff alleges that the jail supervisor, whom the Court does not understand to be named as a defendant,[3] was called to the scene and asked plaintiff why she was naked. Plaintiff states that she remained at the Jail for six weeks and that defendant Tracy taunted her by threatening to mace her again. (*Id*.).

---

[3]The Court understands the "jail supervisor" to be included as additional background to the alleged pepper-spray incident. Although the "jail supervisor" is mentioned in the complaint, "this individual would not have fair notice of the claims or factual grounds upon which [any] claims would rest." *Wilske v. Granholm*, No. 08-13270, 2008 WL 4852678, at *1 (E.D. Mich. Nov. 7, 2008).

**Count Three**

In Count Three, plaintiff alleges that on August 26, 2022, she was at a gas station with two friends to cash in a lottery ticket.  (*Id*.).  While there, she was allegedly approached by defendant Unknown Bondsman.  (*Id*.; *see also* Doc. 1-1, at PageID 18).  Plaintiff states that she did not recognize the bondsman, he did not identify himself, and he was wearing plain clothes. (Doc. 1-2, at PageID 26).  Plaintiff asserts that, as she returned to the truck, Unknown Bondsman tased her from behind, causing her to fall and cut her head.  Plaintiff states that "[t]he next thing [she] remember[s] is laying on the ground next to the gas pump in excruciating pain with [her] hands cuffed."  (*Id*.).  While she was on the ground, defendant Michael Kinney, a bail bondsman whose voice plaintiff recognized from calls she made as a condition of her bond, drove up and plaintiff asked him what had happened.  (*Id*. at PageID 26-27).  Defendant Unknown Bondsman allegedly apologized to defendant Kinney for not having his badge out or identifying himself to plaintiff.  (*Id*. at PageID 27).

Plaintiff asserts that, after the above events, she was taken to the hospital, where the prongs from the taser were removed from her back and she received treatment for abrasions to her body and head and for a concussion.  (*Id*.).  Plaintiff states that the Emergency Room doctor gave her an ice bag "to keep her head with ice," two prescriptions for swelling and pain, and a wash rag to keep the abrasions clean.  (*Id.* at PageID 27).  The doctor also allegedly ordered for plaintiff to be awoken "by someone and asked questions to make sure her concussion was not severe enough to seek further medical attention" and to been seen by a doctor again in 5-7 days. (*Id*.).

**Count Four**

6

In Count Four, plaintiff asserts that, following her discharge from the hospital, she was taken to the Jail.  (*Id*.).  In an affidavit attached to the complaint, plaintiff states that defendant Kinney gave "Erin[4] and Jess the paperwork from the hospital" and "was told by the ladies it would be forwarded to the jail nurse."  (Doc. 1-3, at PageID 39).  It appears from plaintiff's allegations that the paperwork was in fact forwarded, but that defendant Unknown Nurse allegedly refused to comply with the doctor's orders, "suggesting she knew more than the doctor and claiming that the Plaintiff was fine and did not require any follow-up medical treatment or any of the prescribed medications."  (Doc. 1-2, at PageID 27).  Plaintiff also alleges that defendant Officer Jess took her ice bag and plaintiff was never given any ice.  (*Id*.).  Plaintiff additionally contends that "[n]one of the Coshocton County Officer's ever came into the cell to check on [her]," she was forced to buy her own Ibuprofen and Tylenol from the commissary, and she suffered from severe headaches for months.  (*Id*.).

According to plaintiff, she was later transferred to state custody.  (Doc. 1-2, at PageID 28).  On July 9, 2023, plaintiff allegedly woke up "with the right side of her face not working at all."  (*Id*. at PageID 29).  She alleges that she was diagnosed with Bell's palsy, which plaintiff claims "could have been avoided had [she] been provided the proper medical treatment ordered by the doctor."  (*Id*. at PageID 28)  Plaintiff further states that "ODRC refuses to send [her] out for CT scan or imaging that is needed."  (*Id*. at PageID 36).

For relief, plaintiff seeks monetary damages.  (Doc. 1-1, at PageID 18; Doc. 1-2, at

---

[4]Similarly to the "jail supervisor," the Court also does not understand "Erin" to be named as a defendant.  As noted above in footnote 1, the Court declines to comb through the record to raise new claims or make legal arguments for plaintiff.  *See Adler*, 144 F.3d at 672.  Further, because it appears that the paperwork allegedly given to Erin was forwarded to the jail nurse, "this individual would not have fair notice of the claims or factual grounds upon which [any] claims would rest."  *Wilske*, 2008 WL 4852678, at *1.

PageID 30).

### C.    Analysis

Based on the above allegations, the Court understands plaintiff to be bringing the following four groups of claims:  unlawful arrest in violation of the Fourth Amendment against defendant AAA Sly Bailbonds arising out of plaintiff's arrest on or about April 4, 2022 (Count One); excessive force in violation of the Fourteenth Amendment against defendants Tracy and Officer Jess arising out of the pepper-spray incident on or about April 4, 2022 and threatening to mace plaintiff again during the following six-week period in violation of the Fourteenth Amendment against defendant Tracy (Count Two); excessive force in violation of the Fourth Amendment against defendants MK Bailbonds, bondsman Michael Kinney, and Unknown Bondsman arising out of plaintiff's arrest on August 26, 2022 (Count Three); and deliberate indifference to plaintiff's serious medical needs in violation of the Fourteenth Amendment against defendants Officer Jess for allegedly taking plaintiff's prescribed icebag, Unknown Nurse for allegedly disregarding the emergency room doctor's orders, and the ODRC for failing to send plaintiff out for testing (Count IV).[5]  The Court also understands plaintiff to be bringing state-law claims for negligence, gross negligence, and intentional and/or unintentional infliction of emotional distress against defendants.  (Doc. 1-1, at PageID 18).

---

[5]Plaintiff's complaint states that she is bringing her claims for the denial of medical care and for excessive force under the Fifth, Eighth, and/or Fourteenth Amendments.  (*See, e.g.*, Doc. 1-2, at PageID 28-30).  "The Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees."  *Bensfield v. Murray*, No. 4:21-cv-P104, 2022 WL 508902, at *2 (W.D. Ky. Feb. 18, 2022) (citing *Brawner v. Scott Cty.*, 14 F.4th 585, 591 (6th Cir. 2021)).  Further, "[a]rrested persons bring § 1983 claims under the Fourth Amendment's protection from unreasonable search and seizure."  *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 740 (S.D. Ohio 2022) (internal quotation omitted).  Because plaintiff is *pro se* and states that she was a pretrial detainee at the time of the alleged events (*see* Doc. 1-1, at PageID 17), the undersigned liberally construes her conditions-of-confinement claims as brought under the Fourteenth Amendment.  The undersigned understands plaintiff's claims for unlawful arrest and for the use of excessive force during her August 26, 2022 arrest as brought under the Fourth Amendment.

At this stage of the proceedings, without the benefit of briefing by the parties, the undersigned concludes, in an abundance of caution, that Count Four's Fourteenth Amendment claim for deliberate-indifference to plaintiff's serious medical needs against defendants Officer Jess and Unknown Nurse, in their individual capacities, is deserving of further development and may proceed at this juncture.[6] The Court has not yet determined whether it will exercise supplemental jurisdiction over any state-law claims against Officer Jess and/or Unknown Nurse in their individual capacities pursuant to 28 U.S.C. § 1367. In light of plaintiff's *pro se* status, the Court will not *sua sponte* dismiss plaintiff's state-law claims against these two defendants in their individual capacities. The Court will determine at a later stage in the proceedings whether the exercise of supplemental jurisdiction over any state-law claims against them in an individual capacity is appropriate. However, for the reasons set forth below, the remainder of plaintiff's complaint should be dismissed. 28 U.S.C. § 1915A(b).

i.      **Failure to State a § 1983 Claim against Defendants Rodgers, Lafferty, and Non-Party Defendants**

The complaint does not contain any allegations against defendants Tim Rodgers or Chip Lafferty. Plaintiff's complaint therefore does not give these defendants fair notice of her claims against them and does not state a plausible claim to relief against them under § 1983. *Erickson*, 551 U.S. at 93. As such, these defendants should be dismissed.

The Court should also dismiss, for failure to state a claim, any claims against the non-

---

[6] While the Court has determined that this Fourteenth Amendment deliberate-indifference claim may proceed for further development at this juncture, "[t]he court cautions Plaintiff this is only a preliminary determination. The court has not made a determination on the merits of h[er] claim[] or potential defenses thereto, nor are Defendants precluded from filing a motion to dismiss [or other appropriate motion] under . . . the Federal Rules of Civil Procedure." *Wiley v. Austin*, No. 8:20CV220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

party individuals mentioned in the complaint.  *See, e.g., Carter v. Jones*, No. 1:24-CV-1348, 2025 WL 875451, at *10 (W.D. Mich. Mar. 21, 2025).

### ii.    Failure to State a § 1983 Claim against the State of Ohio/Ohio Attorney General and the ODRC

Similarly, the complaint does not contain any allegations against defendant State of Ohio/Ohio Attorney General.  Plaintiff has therefore failed to state a claim for relief against the State of Ohio/Ohio Attorney General.  *See Erickson*, 551 U.S. at 93.

Moreover, the Eleventh Amendment operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cty.*, 211 F.3d 331, 334 (6th Cir. 2000).  "It is well established that § 1983 does not abrogate the Eleventh Amendment."  *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).  Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit.  *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).  And, as an instrumentality of the State, the ODRC is also entitled to Eleventh Amendment immunity from suit.  *See Lowe v. Ohio Dep't of Rehab.*, No. 97-3971, 1998 WL 791817, at *2 (6th Cir. Nov. 4, 2008) (finding a prisoner's claims against the ODRC to barred by the Eleventh Amendment).  The State of Ohio and the ODRC are therefore subject to dismissal.

Furthermore, an action against a state official in his official capacity is the equivalent of an action against the State he represents.  *Hafer v. Melo,* 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).  An official-capacity defendant is absolutely immune from monetary damages.  *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*,

157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Because plaintiff sues the Ohio Attorney General in his official capacity only and seeks solely monetary relief, the Court should dismiss plaintiff's claims against the Ohio Attorney General.[7]

Additionally, "Section 1983 creates liability for 'persons' who deprive others of federal rights under color of [state] law." *Hohenberg v. Shelby Cty., Tennessee*, 68 F.4th 336, 342 (6th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)). Neither the State of Ohio nor the ODRC are "person[s]" who can be held liable under § 1983 and are also entitled to dismissal on this basis. *See Patterson v. State of Ohio*, No. 1:19-cv-1524, 2019 WL 5190995, at *2 (N.D. Ohio Oct. 15, 2019) (citing *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 65-66 (1989)) ("It is well-established that the State of Ohio is not a 'person' subject to suit under § 1983. Therefore, Plaintiff fails to state a plausible § 1983 claim for relief against the State of Ohio.") (cleaned up); *Latham v. Ohio Parole Board*, No. 1:15-cv-488, 2015 WL 5905833, at *2 (S.D. Ohio Sept. 16, 2015), *report and recommendation adopted*, 2015 WL 5882979 (S.D. Ohio Oct. 7, 2015) ("Plaintiff's complaint also fails to state a claim for relief under § 1983 against defendant ODRC, as this defendant is not a person under § 1983.").

Therefore, the complaint should be dismissed against defendants State of Ohio/Ohio Attorney General and the ODRC.

### iii. Failure to State a § 1983 Claim against the Coshocton County Sheriff's Department and the Jail

---

[7]However, the Ohio Attorney General in his official capacity is not entitled to Eleventh Amendment immunity from a lawsuit seeking prospective injunctive relief. *See Will,* 491 U.S. at 71 n. 10. The federal court may impose injunctive and prospective declaratory relief to compel a State official to comply with federal law "regardless of whether compliance might have an ancillary effect on the state treasury[.]" *S & M Brands, Inc. v. Cooper,* 527 F.3d 500, 507 (6th Cir. 2008) (citations omitted). But, as set forth herein, plaintiff seeks only monetary relief. Further, the complaint does not contain any factual allegations against the Ohio Attorney General. Therefore, plaintiff's claims against the Ohio Attorney General are subject to dismissal.

Plaintiff's claims against the Coshocton County Sheriff's Department and the Jail are also subject to dismissal.  Neither a sheriff's department nor a county jail are "persons" under § 1983.  As this Court has found, plaintiffs may not state "an actionable claim for relief against [a County Jail or Sheriff's Department] because they are not legal entities that are capable of being sued." *Cook v. Scioto Cty. Jail*, No. 1:20-cv-22, 2020 WL 1031491, at *2 (S.D. Ohio Mar. 3, 2020), *report and recommendation adopted*, 2020 WL 1322066 (S.D. Ohio Mar. 20, 2020) (citing *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) and a number of other cases).  *See also Stanton v. Butler Cty. Sheriff's Dep't*, No. 1:15-cv-149, 2015 WL 2452439, at *3 (S.D. Ohio May 21, 2015) (finding "to the extent that plaintiff has named the Butler County Sheriff's Department as a defendant in the caption of the complaint, he has failed to state a plausible claim for relief.  It is well-settled that 'under Ohio law, a county sheriff's office is not a legal entity that is capable of being sued'") (citations omitted); *Copeland v. Kelly*, No. 1:22-cv-129, 2024 WL 1297671, at *2 (S.D. Ohio Mar. 27, 2024) (citing *Polachek v. Roberts*, No. 1:22-cv-742, 2023 WL 6348388, at *2 (S.D. Ohio Sept. 28, 2023) ("[C]orrectional facilities, such as the Butler County Jail, are not proper persons to be defendants in a § 1983 action.").  Plaintiff's claims against these two entities should therefore be dismissed.

### iv. Failure to State a § 1983 Claim against AAA Sly Bail Bonds, MK Bailbonds, Bondsman Michael Kinney, and Unknown Bondsman

Because § 1983, "applies only to [persons] who act 'under color' of state law[,] . . . as a general rule, § 1983 does not reach the conduct of private parties acting in their individual capacities."  *Weser v. Goodson*, 965 F.3d 507, 515 (6th Cir. 2020) (citing *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007)).  "A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party

'acted together with or . . . obtained significant aid from state officials' and did so to such a degree that its actions may properly be characterized as 'state action.'"  *Davis v. Brudzinski*, No. 3:24 CV 1421, 2025 WL 268375, at *3 (N.D. Ohio Jan. 22, 2025) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

In this regard, "[c]ourts have generally found bondspersons [and bonding companies] to be private actors when they act unilaterally, without assistance from law enforcement officials." *Morant v. Moyer*, No. 2:21-CV-05211, 2021 WL 5937757, at *4 (S.D. Ohio Dec. 16, 2021), *report and recommendation adopted,* No. 2:21-CV-5211, 2022 WL 93340 (S.D. Ohio Jan. 10, 2022) (citing cases).  Given the absence of any allegations in Counts One and/or Three that defendants AAA Sly Bail Bonds, MK Bailbonds, or Michael Kinney enlisted the assistance of law enforcement in the arrest of plaintiff, they are considered private actors and Counts and Three should be dismissed.  *See id*. at *5.  *See also Hubbard v. Abbott Bailbonds Agency LLC*, No. 1:20-CV-294, 2021 WL 1589109, at *3 (W.D. Mich. Apr. 23, 2021) (finding "no basis for inferring that Defendants acted under color of state law" where the plaintiff did not allege any "involvement by the state at all in the events giving rise to his injuries").

Furthermore, to the extent that plaintiff asserts in Count One that the "trial court" failed to prove a positive drug screen to revoke plaintiff's bond, county courts are not *sui juris* and cannot be sued in their own right.  *Jones v. Singer*, No. 3:16-CV-142, 2017 WL 175798, at *1 (S.D. Ohio Jan. 17, 2017).

### v.    Count Two's § 1983 Claims against Macy Tracy and Officer Jess Are Barred by the Statute of Limitations

Plaintiff's § 1983 Claims in Count Two against defendants Tracy and Officer Jess should be dismissed because they are barred by Ohio's applicable two-year statute of limitations.  *See,*

*e.g.*, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that the "appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code Ann. § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (and Supreme Court cases cited therein) (holding that the statute of limitations governing § 1983 actions "is that which the State provides for personal-injury torts"); *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012). In the § 1983 context, the Sixth Circuit has adopted the discovery rule, which considers a plaintiff to have a complete and present cause of action "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (quoting *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)).

Although the statute of limitations is an affirmative defense, when it appears clear on initial screening of the complaint that a claim is time-barred, the claim may be dismissed for failure to state a claim upon which relief may be granted. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (citations omitted); *Watson v. Wayne Cty.*, 90 F. App'x 814, 815 (6th Cir. 2004) (citing *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995)) ("If a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue sua sponte."); *Alston v. Tenn. Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) (citation omitted) ("Because the statute of limitations defect was obvious from the face of the complaint, sua sponte dismissal of the complaint was appropriate.").

Giving plaintiff the benefit of the mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 276, (1988), she initiated this action, at the earliest, on September 26, 2024, the date her complaint

14

was signed.  (See Doc. 1-1, at PageID 24).  The pepper-spray incident alleged Count Two occurred on or about April 4, 2022, well more than two years prior to the filing of the complaint. Even considering plaintiff's allegations that defendant Tracy threatened to mace her again during the next six weeks (*see* Doc. 1-2, at PageID 26), plaintiff's allegations still occurred well more than two years prior to the filing of her complaint.[8]

Because plaintiff knew or would have had reason to know of the conduct underlying Count Two more than two years prior to the filing of her complaint in September 2024, Count Two is time-barred and should be dismissed.  *Jones*, 549 U.S. at 215; *Watson*, 90 F. App'x at 815; *Alston*, 28 F. App'x at 476.

### vi. Plaintiff's § 1983 Official Capacity Claims against Defendants Officer Jess and Unknown Nurse Should Be Dismissed

Finally, although plaintiff may proceed for further development at this juncture on Count Four's Fourteenth Amendment claims for deliberate indifference to her serious medical needs against defendants Officer Jess and Unknown Nurse in their individual capacities, Count Four's Fourteenth Amendment claims against Officer Jess and Unknown Nurse in their official capacities should be dismissed.

As this Court has previously explained:

> "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). Thus, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when

---

[8]The undersigned further notes that threats generally are insufficient to state a constitutional claim.  *See, e.g., Lee v. Bailey*, No. 24-cv-2141, 2025 WL 357853, at *2 (S.D. Ill. Jan. 31, 2025) (finding alleged threats by prison guard to mace the plaintiff insufficient to state a constitutional violation).

execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).

*Kilkenny v. Gabriel*, No. 2:19-CV-3661, 2019 WL 4601856, at *3 (S.D. Ohio Sept. 23, 2019),

*report and recommendation adopted*, No. 2:19-CV-3661, 2019 WL 6609211 (S.D. Ohio Dec. 5, 2019).

Because plaintiff has not alleged that she was denied medical care pursuant to any identified policies or established customs of Coshocton County, she cannot maintain suit against the County itself. Thus, plaintiff has failed to state a claim against defendants Officer Jess and Unknown Nurse in their official capacities.

### vii. Plaintiff's Remaining State-Law Claims

Having found that the Court should dismiss plaintiff's federal claims against defendants State of Ohio/Ohio Attorney General, ODRC, Coshocton County Sheriff's Department, Coshocton County Jail, Tim Rodgers, Macy Tracy, Chip Lafferty, AAA Sly Bail Bonds, MK Bailbonds, bondsman Michael Kinney, Unknown Bondsman, any non-party defendant, as well as defendants Officer Jess and Unknown Nurse in their official capacities, the undersigned further recommends that the Court decline to exercise supplemental jurisdiction over plaintiff's state-law claims against these defendants and dismiss such claims without prejudice. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39 (2025) ("[W]ith any federal anchor gone, supplemental jurisdiction over the residual state claims disappears as well."); 28 U.S.C.

16

§ 1367(c)(3).

### D.    Conclusion

Accordingly, in sum, Plaintiff's complaint, with the exception of Count Four's Fourteenth Amendment claims for alleged deliberate indifference to her serious medical needs against defendants Officer Jess and Unknown Nurse in their individual capacities and plaintiff's state-law claims for negligence, gross negligence, and intentional and/or unintentional infliction of emotional distress against these two defendants in their individua capacities should be **DISMISSED**.

The undersigned notes, however, that neither defendant Officer Jess nor Unknown Nurse is identified by their full name.  Because plaintiff has provided insufficient identifying information for these defendants, *see, generally, Jones v. Sheriff Officer Unknown of Lancaster Cty.*, No. 8:20CV365, 2021 WL 2351118, at *3 (D. Neb. June 9, 2021), the Court will treat them as unidentified defendants.  Although designation of a "John Doe" or "unknown" defendant is not favored in the federal courts, it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed but plaintiff could identify said defendant through discovery.  *Yates v. Young,* 772 F.2d 909 (6th Cir. 1985) (unpublished), 1985 WL 13614, citing *Schiff v. Kennedy,* 691 F.2d 196 (4th Cir. 1982); *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir. 1980); *Maclin v. Paulson,* 627 F.2d 83 (7th Cir. 1980). *In accord Downie v. City of Middleburg Hts.,* 76 F.Supp.2d 794, 801 n. 5 (N.D. Ohio 1999).  The Federal Rules of Civil Procedure do not require the Court to dismiss unknown defendants simply because the plaintiff is unaware of the identity of those defendants at the time of the filing of the complaint.  Rather, "the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it

17

is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie,* 629 F.2d at 642; *see also Wakefield v. Thompson,* 177 F.3d 1160, 1163 (9th Cir. 1999).[9]

Under the circumstances of this case, it is appropriate to permit service of the complaint on a high-ranking official who could identify Officer Jess and Unknown Nurse through discovery. *See Mosby v. Doe,* No. 08-cv-677, 2009 WL 192502, at *1 (W.D. Wis. Jan. 27, 2009). As the current Coshocton County Sheriff is in a position to know or determine the name of these two defendants, it is appropriate to serve the current Coshocton County Sheriff for this limited purpose only. Once plaintiff discovers the name of these defendants, she will be required to amend her complaint to identify them and the current Coshocton County Sheriff will be dismissed. It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for the current Coshocton County Sheriff, Christopher Walters, for this limited purpose. **Plaintiff is advised that failure to comply with this Order will result in the dismissal of this action for want of prosecution. Should she need additional time, she must file a motion for extension of time.**

### IT IS THEREFORE RECOMMENDED THAT:

1.     Plaintiff's federal claims in Counts One, Two, and Three of the complaint against

---

[9]Plaintiff has filed a document titled "Plaintiff's First Request for Production of Documents" that purport to be propounded on defendants State of Ohio, AAA Sly Bail Bonds, Coshocton County Sheriff's Department, Coshocton County Jail, Bondman Michael Kinney, and MK Bail Bonds. (Doc. 6). First, each of these defendants has been dismissed. Second, plaintiff's discovery request is premature. At this time, no defendant has been served with process and the Court has not entered a scheduling order. Further, even after the entry of a scheduling order, the Court notes that discovery requests are not to be filed of record. Fed. R. Civ. P. 5(d). Instead, plaintiff should serve the defendant from whom the discovery is requested, or if an appearance has been entered by counsel, defendant's attorney(s), directly with such requests. Intervention of the Court is neither required nor permitted in most instances. *See* S.D. Ohio Civ. Local Rules 5.4 and 37.1.

defendants Macy Tracy, Officer Jess, AAA Sly Bail Bonds, MK Bailbonds, bondsman Michael

Kinney, and/or Unknown Bondsman be **DISMISSED with prejudice** for failure to state a claim

upon which relief can be granted, *see Wilkins v. S. Ohio Corr. Facility*, No. 1:21-CV-260, 2022

WL 2440392, at *1 (S.D. Ohio July 5, 2022).

2.  Plaintiff's federal claims against the State of Ohio\Ohio Attorney General, the

ODRC, the Coshocton County Sheriff's Department, and the Coshocton County Jail be

**DISMISSED with prejudice** for failure to state a claim upon which relief can be granted, *see id.*

3.  Plaintiff's federal claims against defendants Tim Rodgers and Chip Lafferty be

**DISMISSED without prejudice** for failing to include any allegations against them, *see*

*Newberry v. Silverman*, 789 F.3d636, 646 (6th Cir. 2015).

4.  Plaintiff's federal claims against defendants Officer Jess and Unknown Nurse in

their official capacities be **DISMISSED without prejudice** for failure to state a claim upon

which relief can be granted, *see id.*

5.  Plaintiff's federal claims against any non-party defendants be **DISMISSED**

**without prejudice**, *see id.*

6.  Any state-law claims against defendants State of Ohio\Ohio Attorney General,

ODRC, AAA Sly Bail Bonds, MK Bailbonds, bondsman Michael Kinney, Unknown Bondsman,

the Coshocton County Sheriff's Department, the Coshocton County Jail, any non-party

defendant, as well as defendants Officer Jess and Unknown Nurse in their official capacities be

**DISMISSED without prejudice**.  28 U.S.C. § 1367.

### IT IS THEREFORE ORDERED THAT:

1.  Within **thirty (30) days** of receipt of this Order and Report and Recommendation,

plaintiff **SHALL** submit to the Court a completed summons and U.S. Marshal form for Coshocton County Sheriff Christopher Walters.

2.     The **CLERK OF COURT** is **DIRECTED** to send to plaintiff a summons form and a U.S. Marshal form for this purpose.  Upon receipt of the completed summons and U.S. Marshal forms, the Court **ORDERS** service of process by the United States Marshal in this case as directed by plaintiff.  Plaintiff shall be granted leave to proceed against the current Coshocton County Sheriff, Christopher Walters, solely for the purpose of determining the identities of defendants Officer Jess and Unknown Nurse.  The **CLERK OF COURT** is **DIRECTED** to add Coshocton County Sheriff Christopher Walters as an interested party to the case for this sole purpose.

3.     Plaintiff **SHALL** file a motion to issue service, including updated U.S. Marshal and summons forms, if and when plaintiff discovers the identities of defendants Officer Jess and Unknown Nurse through discovery.  Plaintiff is advised that no service will be issued on Officer Jess or Unknown Nurse unless plaintiff complies with this Order.

4.     Plaintiff shall serve upon defendant(s) or, if appearance has been entered by counsel, upon the attorney(s) for defendant(s), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant(s) or counsel.  Any paper received by a District Judge or Magistrate Judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

5.     Plaintiff shall inform the Court promptly of any changes in her address which

may occur during the pendency of this lawsuit.

6.     In the interest of maintaining clarity in the docket, the **CLERK OF COURT** is also **DIRECTED** to add the names of following individuals/entities as defendants in the Court's docket:  MK Bailbonds, Michael Kinney, Unknown Bondsman, Unknown Nurse, and the Ohio Department of Rehabilitation and Correction.

### PROCEDURE ON OBJECTIONS:

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

May 8, 2025                                    *s/Stephanie K. Bowman*
                                              STEPHANIE K. BOWMAN
                                              United States Magistrate Judge